IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-74-D

| | | |
|---|---|---|
| MANIEKA SHA'VON STOKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, pro se plaintiff Manieka Sha'Von Stokes ("plaintiff" or "claimant") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the Commissioner's motion for judgment on the pleadings. (D.E. 26). The Commissioner filed a memorandum in support of his motion (D.E. 27). Plaintiff did not file her own motion for judgment on the pleadings, as the court directed (D.E. 22), or file any response to the Commissioner's motion. The motion was referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 28). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed and the decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I.  BACKGROUND

### A.  Case History

Plaintiff filed applications for DIB and SSI on 3 July 2008, alleging a disability onset date of 2 July 2008.[2]  Transcript of Proceedings ("Tr.") 9.  The application was denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 9, 62-67, 72, 82-83.  On 9 March 2010, a hearing was held before an Administrative Law Judge ("ALJ").  Tr. 25-40.  In a written decision dated 1 April 2010, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI.  Tr. 9-20.  Plaintiff timely requested review by the Appeals Council.  Tr. 14.  The Appeals Council denied the request for review on 23 December 2010.  Tr. 1-5.  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff commenced this proceeding for judicial review on 18 February 2011, pursuant to 42 U.S.C. § 405(g).  (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 3); Compl. (D.E. 4)).

### B.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

---

[2] In 2003, plaintiff had applied for SSI disability benefits, which were ultimately approved, but she subsequently resumed working from September 2006 until July 2008.  Tr. 9; 15 ¶ 5.

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.     **Findings of the ALJ**

Plaintiff was 27 years old on the alleged onset date of disability and 29 years old on the date of the administrative hearing. Tr. 18 ¶ 7; 30. She testified that she has a high school education and finished two years of college. Tr. 30. Her past work includes employment as a child daycare worker and sales clerk. Tr. 18 ¶ 6; 31-32

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 11 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: systematic lupus erythematosus ("SLE") and class II lupus nephritis[3] (collectively "plaintiff's lupus"), hypertension, and anxiety. Tr. 12 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 12 ¶ 4.

---

[3] "Systemic [or systematic] lupus erythematosus (SLE) is a long-term autoimmune disorder that may affect the skin, joints, kidneys, brain, and other organs." MedlinePlus website, entry for "Systemic lupus erythematosus," http://www.nlm.nih.gov/medlineplus/ency/article/000435.htm (last visited 22 Jan. 2013). Lupus nephritis is a complication of SLE. *See* PubMed Health website, entry for "Lupus nephritis," http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001512/ (last visited 22 Jan. 2013). Lupus nephritis type II is one of several forms of the disease. *See* Renal Digest website, entry for "Lupus nephritis, mesangioproliferative type (class II)," http://renaldigest.com/cgi-bin/nephrology/preview?ADD=0&FLAG=1&DBASE=1&LESION_ID=9&BOOK_ID=1&POST=toc  (last visited 22 Jan. 2013).

The ALJ next determined that plaintiff had the RFC to perform less than a full range of light work.[4] Tr. 13 ¶ 5. The specific limitations he found were that she required a sit-stand option every 45 to 60 minutes; could perform precision fine fingering only occasionally (*i.e.*, up to one third of the time); and could have no quota requirements. Tr. 13 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work. Tr. 18 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including cashier II, photocopy machine operator, and office helper. Tr. 19 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 19 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison*

---

[4] For the definition of light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work." Light work means "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly . . . to move objects." *Id.* The DOT is available at http://www.oalj.dol.gov/libdot.htm (last visited 22 Jan. 2013).

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where, as here, the claimant has failed to fully litigate his court challenge to the Commissioner's decision, some courts have held that the case is subject to dismissal without consideration of the merits. *See, e.g.*, *Gamble v. Astrue*, No. CV 08-3767-AGR, 2009 WL 982083, at *1-*2 (C.D. Cal. 13 Apr. 2009) (dismissing case for failure to prosecute where plaintiff did not file a motion for judgment on the pleadings as ordered); *Gibbs v. Astrue*, No. 07 Civ. 10563, 2008 WL 2627714, at *15-*16 (S.D.N.Y. 2 July 2008) (magistrate judge's rep. and recommendation) (holding that case could be dismissed due to pro se plaintiff's failure to file brief or affidavit in opposition to Commissioner's motion for judgment on the pleadings and to

specify objections to Commissioner's decision in conclusory complaint, but nonetheless reviewing case on the merits), *adopted*, 2008 WL 4620203 (16 Oct. 2008, as amended 3 Nov. 2008). Other courts, however, have treated review of cases on the merits as necessary under such circumstances, attempting to identify the basis for the challenge to the Commissioner's decision from the filings the claimant did make. *See, e.g., Bagley v. Astrue*, Civ. Act. No. 5:09-00335, 2010 WL 3852279, at *3 (S.D. W.Va 30 Sep. 2010) (reviewing Commissioner's decision on the merits notwithstanding plaintiff's failure to file a motion for judgment on the pleadings or to assert specific objections to Commissioner's decision in request for Appeals Council's review of ALJ's decision or complaint); *Caputo v. Astrue*, No. 07-CV-3992, 2010 WL 3924676 (E.D.N.Y. 29 Sep. 2010) (reviewing Commissioner's decision on the merits in absence of opposition by pro se plaintiff to Commissioner's motion for judgment on the pleadings).

## B. Plaintiff's Contentions

In a two-paragraph statement accompanying plaintiff's request for Appeals Council review of the ALJ's decision, plaintiff first summarized her alleged impairments and then objects to the decision in conclusory terms: "The reports [referenced] in the denial statement [i.e, the ALJ's decision] are not correct and some/most of the information I do not know where it came from." Tr. 117. She next stated that she seeks an appeal "to correct, justify and gather 'more evidence' for these reports" and that she "will be gathering more evidence and will be speaking to more doctors and physiciatrist [sic] (therapist) to justify my claim." Tr. 117; *see also* Tr. 116. In her complaint, the only insight plaintiff provides into the nature of her objections to the Commissioner's decision is her statement that the relief she seeks is "[a]pproval for SSI due to my condition of having Type II Lupus (SLE)." Compl. 4.

Construing plaintiff's request for review and complaint liberally, particularly in light of her pro se status, *see Caputo,* 2010 WL 3924676, at *2 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the court presumes her to be alleging that the record in this case requires further development and that the ALJ erred in his determinations regarding plaintiff's lupus. Without deciding whether the law requires the court to address the Commissioner's decision on the merits in light of plaintiff's failure to actively litigate this case, the court will address each of these presumed objections by plaintiff in turn below.

### C. Adequacy of Development of the Record

"Although the ALJ has a duty to 'explore all relevant facts and inquire into the issues necessary for adequate development of the record,' *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), '[he] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.' *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)." *Bell v. Chater*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 9 Jun. 1995) (unpublished table decision). There was clearly sufficient evidence before the ALJ to enable him to determine the central issue of disability. The discussion in the following section substantiates this fact with respect to plaintiff's lupus. The court's review of the record shows that it is also true with respect to plaintiff's remaining impairments. Moreover, plaintiff has made no showing that she ever did obtain additional reports from any physician, psychiatrist, or any other health-care provider, or that any such report would have affected in any way the ALJ's determination of the case. The court accordingly rejects the first presumed objection by plaintiff to the Commissioner's decision.

8
Case 5:11-cv-00074-D   Document 29   Filed 01/23/13   Page 8 of 14

### D. Sufficiency of ALJ's Determinations regarding Plaintiff's Lupus

The ALJ's initial determination regarding plaintiff's lupus was his finding at step two of the sequential analysis that plaintiff's SLE and lupus nephritis were severe impairments. Tr. 12 ¶ 3. Plaintiff obviously does not challenge this determination because it is favorable to her. The court finds, nonetheless, that it is based on the proper legal standards and supported by substantial evidence, much of which is referenced below.

The ALJ next determined that plaintiff's lupus does not meet or medically equal any listing. He explained in detail the basis for this determination.

With respect to plaintiff's SLE, he stated:

> The claimant's systemic lupus erythematosus does not meet the relevant criteria in Listing 14.02[5] since there is no involvement of two or more organs/body systems of a degree referenced in section A of that Listing and the claimant does not have significant constitutional symptoms with marked limitations in activities of daily living, maintaining social functioning or maintaining concentration, persistence or pace, as described in section B of that Listing. Claimant's physician, Mohammad H. Baloch, M.D., indicated in December 2008 that she had shown "marked recovery" with prescribed medication. Moreover, Dr. Baloch noted there was a moderate degree of involvement with claimant's kidneys and mild involvement with inflammatory arthritis.[6] Dr. Baloch did not indicate that

---

[5] Listing 14.02 reads:

> 14.02 Systemic lupus erythematosus. As described in 14.00D1. With:
> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
> or
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.02 (italicization omitted).

[6] The ALJ subsequently questioned the validity of these findings by Dr. Baloch, stating that he gave them only "some weight." Tr. 15 ¶ 5. In relying on them in his listing analysis, he was viewing them in the light most favorable to plaintiff.

any other organs/body systems were involved. (Ex. 11F). Further, in a January 2010 evaluation by University of North Carolina Hospitals, Robert A. Roubey, M.D., determined that, despite [the] history of systemic lupus erythematosus, there was no clinical evidence of disease activity based on the physical exam and laboratory data. (Ex. 17F).

Tr. 12 ¶ 4; *see* Tr. 13 ¶ 4 (separate discussion of paragraph B criteria).

With respect to plaintiff's lupus nephritis, the ALJ stated:

[C]laimant's class II lupus nephritis does not meet the criteria in Listing 6.02.[7] Claimant's condition does not require chronic hemodialysis or peritoneal dialysis, kidney transplantation, nor has she had persistent elevation of serum creatinine with attending complications noted in section C. In an October 2008 emergency room visit, claimant's serum creatinine was 0.79. (Ex. 14F). On August 24, 2009, claimant's serum creatinine was 0.93. (Ex. 14F). In November 2009, claimant's serum creatinine was 0.9 (Ex. 18F).

Tr. 12 ¶ 4.

The court finds that the ALJ's listing determination with respect to both the SLE and lupus nephritis is based on the proper legal standards. The court also finds that the evidence the ALJ cites constitutes substantial evidence in support of the listing determination.

---

[7] Listing 6.02 reads:

> 6.02 Impairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months. With:
> A. Chronic hemodialysis or peritoneal dialysis (see 6.00E1).
> or
> B. Kidney transplantation. Consider under a disability for 12 months following surgery; thereafter, evaluate the residual impairment (see 6.00E2).
> or
> C. Persistent elevation of serum creatinine to 4 mg per deciliter (dL) (100 ml) or greater or reduction of creatinine clearance to 20 ml per minute or less, over at least 3 months, with one of the following:
> 1. Renal osteodystrophy (see 6.00E3) manifested by severe bone pain and appropriate medically acceptable imaging demonstrating abnormalities such as osteitis fibrosa, significant osteoporosis, osteomalacia, or pathologic fractures; or
> 2. Persistent motor or sensory neuropathy (see 6.00E4); or
> 3. Persistent fluid overload syndrome with:
> a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg; or
> b. Persistent signs of vascular congestion despite prescribed therapy (see 6.00B5); or
> 4. Persistent anorexia with weight loss determined by body mass index (BMI) of less than 18.0, calculated on at least two evaluations at least 30 days apart within a consecutive 6–month period (see 5.00G2).

Listing 6.02 (italicization omitted).

The ALJ next determined plaintiff's RFC, including in his analysis, of course, his assessment of plaintiff's credibility. Again, the court finds no error.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "'specific reasons'" for that finding that are "'supported by the evidence.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. §§ 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms), 416.929 (same).

Here, the ALJ first reviewed plaintiff's hearing testimony, in which she described allegedly disabling limitations from her lupus and other alleged impairments. Tr. 14 ¶ 5; *see* Tr. 30-37. The ALJ then made the first-step finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 14 ¶ 5. At step two, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 14 ¶ 5.

After reviewing the medical evidence comprehensively and explaining the weight he gave to the opinion evidence (Tr. 14-17 ¶ 5), the ALJ gave a detailed summary of the bases for his credibility determination (Tr. 17 ¶ 5). Regarding her lupus, the ALJ stated:

> With respect to claimant's allegations of symptoms from [SLE] . . . [and] class II lupus nephritis . . . , including back and hip pain and headaches, her assertions are

> not persuasive to the extent they are inconsistent with the . . . [RFC] assessment. Claimant's nephrologist [Sammy Moghazi, M.D.] indicated that claimant's lupus nephritis was in remission, beginning in August 2004. In September 2008, claimant's primary care physician [Dr. Baloch] stated that she had not had further recurrence of lupus. In December 2008, claimant's primary care physician noted that claimant was not on long term steroid therapy. Claimant reported in an emergency department visit in June 2009 that she had not been taking her medications for lupus. Claimant also admitted in a January 2010 evaluation performed by Dr. Robert Roubey that she had not been seen by a rheumatologist in at least 2 years and had not been prescribed [P]rednisone for some time as well. Dr. Roubey opined that Prednisone was not clinically necessary and that there was no evidence of [SLE] either on physical exam or recent laboratory data. (Ex.(s) 8F, 11F, 13F, 17F). However, claimant testified that she resumed taking Prednisone approximately 1 month prior to hearing and felt this would help her gain weight. . . . . Claimant testified to chronic, daily pain in her low back, legs and hips, as well as headaches. However, claimant was noted to have full range of motion in a September 2008 office visit and March 2009 emergency room visit. Moreover, claimant reported to Dr. Roubey that she had only occasional low back pain at night and after activities which was better in the morning with rest. Claimant also denied any joint pain, swelling or tenderness. (Ex.(s) 8F, 12F, 17F). The above mentioned activities and reports are inconsistent with the presence of greater limitations than were found in the . . . [RFC] assessment.

Tr. 17 ¶ 5.

The court finds that the ALJ's credibility assessment conforms to the applicable legal standards and is supported by substantial evidence. The evidence cited by the ALJ in the foregoing summary of his analysis alone constitutes substantial evidence supporting the assessment. The assessment finds further support in other medical and non-medical evidence, such as plaintiff's activities of daily living, discussed elsewhere by the ALJ. *See,* Tr., *e.g.*, 17 ¶ 5 ("[C]laimant also stated that she continues to live by herself and is able to drive.").

Based, in part, on this credibility assessment, the ALJ made the RFC determination that plaintiff could perform a limited range of light work notwithstanding the limitations resulting from her lupus and other impairments. Tr. 13 ¶ 5. He summarized his RFC analysis by stating: "In sum, the above [RFC] assessment is supported by the objective medical evidence, the wide range of activities of daily living the claimant was able to participate in during the requested

period of disability and the evidence as a whole." Tr. 17 ¶ 5. The court finds that the RFC determination, with respect to plaintiff's lupus and otherwise, is based on the proper legal standards and supported by substantial evidence.

As indicated, at step four, based on the RFC determination, the ALJ found that plaintiff could not return to her past relevant work, which required her to perform an unlimited range of work at the light or medium exertional levels. *See* Tr. 18 ¶ 6. Plaintiff presumably does not challenge this determination because it favors her. In any event, it is based on the proper legal standards and supported by substantial evidence. *See* Tr., *e.g.,* 38 (vocational expert's testimony on plaintiff's past relevant work). The court reaches the same conclusion regarding the ALJ's determination at step five that, based on plaintiff's RFC, there are sufficient jobs in the national economy that plaintiff could perform. *See* Tr., *e.g.*, 38-39 (vocational expert's testimony on availability of jobs to plaintiff). The court therefore rejects plaintiff's second presumed challenge to the Commissioner's decision.

## III. CONCLUSION

After careful consideration of the Commissioner's decision, with respect to plaintiff's lupus and her other impairments, and without deciding whether the law requires the court to consider the Commissioner's decision on the merits in light of plaintiff's failure to actively litigate this case, the court concludes that it based on the proper legal standards and supported by substantial evidence of record. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days in which to file written objections.

Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections must be filed within 14 days after service thereof.

This, the 22nd day of January 2013.

_/s/ James E. Gates_
James E. Gates
United States Magistrate Judge